[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 23-13404

Non-Argument Calendar

————————————————

KEITHON M. STANLEY,

Petitioner-Appellee.

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellant,

ATTORNEY GENERAL, STATE OF FLORIDA,

Respondent.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:13-cv-02800-MSS-CPT

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

The Secretary of the Florida Department of Corrections appeals the order granting Keithon Stanley's petition for a writ of habeas corpus. 28 U.S.C. § 2254. Because the district court lacked jurisdiction to review two of Stanley's convictions and otherwise committed no reversible error, we vacate and remand with instructions to dismiss in part and affirm in part.

## I. BACKGROUND

In 2001, a Florida grand jury charged Keithon and Omar Stanley in a superseding information with first degree attempted felony murder, attempted robbery, burglary of a conveyance, and grand theft of a motor vehicle for breaking into a convenience store and shooting Yong Lawrence. After another public defender withdrew from representing Keithon, Assistant Public Defender

Harvey Hyman, who already represented Omar, undertook Keithon's representation.

Detective Gary Roo's initial reports and deposition testimony suggested that Lawrence identified Omar as the shooter. An initial report stated that "Keithon was not the shooter." Roo testified that Lawrence could not positively identify Keithon and never identified Omar in a photographic lineup. But Lawrence eventually recognized Keithon and advised that he had a small gun, that the shooter had a large revolver, and that the "other suspect" shot her. Ricky Taylor, who had witnessed the men come out of the store, testified in a pretrial deposition that Omar was the taller brother with gold in his mouth.

The Stanleys proceeded to trial. The trial court asked whether the brothers had any objection to being jointly represented. Hyman stated they had gone over it "numerous times" and that they had agreed. The trial court stated they had the right to be represented by separate attorneys and that Hyman had discussed it with them. Omar stated he wanted Hyman to represent him, but he wanted separate trials. The trial court stated there was no reason for a separate trial, and Omar confirmed he did not object to being represented by Hyman. When asked if he had an objection to joint representation Keithon stated, "No—I mean I didn't receive the option but I'm pretty fair with Mr. Hyman." The trial court found that "based on our conversation" there was no conflict.

At trial, the state asserted that Keithon and Omar entered Lawrence's store, that Keithon—the taller brother—shot her in the

hip, and that the two fled the scene in a stolen car. Hyman made an opening statement for Omar because Keithon reserved his opening statement. He argued that there was no evidence linking either Keithon or Omar to the crime. He told the jury that the state had stated that Lawrence said Keithon was not the person who shot her. He concluded, "[t]here is absolutely no evidence against Omar, period. And the evidence against Keithon is really, really weak."

Ricky Taylor testified that he saw a tall man with gold teeth and a short man walk toward the store and run out shortly after. He later saw Keithon and Omar's photos in a newspaper and recognized them as the men who entered the store. He identified them in court. Hyman cross-examined Taylor but did not ask him about the differences in his deposition testimony stating Omar was the taller brother.

Lawrence testified that the tall man shot her, that the tall man had a long gun, and that the short man had a short gun. Hyman cross-examined Lawrence but did not ask about her prior statements that Keithon was not the shooter.

Detective Mark Dinsmore testified that he had a phone call with Keithon before he was in custody, and Keithon stated that he did not commit the robbery. He testified that Omar had gold teeth and was the shorter of the two brothers. Hyman did not cross-examine Dinsmore regarding the brothers' relative heights.

Detective Roo testified that Lawrence did not identify Omar in a photographic lineup and did not positively identify Keithon. But she eventually pointed to Keithon and said, "[t]his is the person

that had the small chrome gun, but it's not the one that shot me." Roo interviewed Keithon, and Keithon asserted that he never robbed the store or shot anyone in the store and made a written statement that he did not enter the store on the day of the crime. The state rested.

In arguing for the renewal of a prior motion to suppress, Hyman stated that he would not make any closing argument about how Lawrence did not identify Keithon in court, as the judge ruled that she could have, so he was going to "let that go." When discussing the verdict forms, Hyman argued that Omar should not have faced more than a ten-year mandatory minimum sentence of imprisonment, and the state agreed. *See* Fla. Stat. § 775.087(2)(a) (2000) (requiring a 10-year mandatory minimum for possessing a firearm during a felony, 20 years for discharging a firearm during a felony, and 25 years to life for discharging and causing death or great bodily harm during a felony). Hyman also argued that Keithon should only be facing ten years because, even if he were the gunman, he was not identified as the shooter. The state argued that the physical evidence proved that Keithon was the shooter, and the trial court denied Hyman's argument as to Keithon. The verdict forms were updated to state that Keithon "discharged" a gun and Omar "possessed" a gun. As a result, Keithon alone faced the possibility of a mandatory minimum of 25 years. *See id.* Omar did not testify, but Keithon testified he did not commit the offense. The defense rested.

During the state's closing arguments, it argued that the location of Keithon and Omar's fingerprints in the store established that Lawrence was mistaken, and Keithon was the shooter. Hyman objected to the state's assertion that Keithon was the shooter because Lawrence had stated that Keithon did not shoot her, which the trial court overruled. The state argued that Keithon was the principal of the offense as the shooter. It stated that the verdict form for Omar did not include language stating that he discharged the gun as the evidence was consistent with Keithon firing the gun.

In closing argument, Hyman addressed Lawrence's identification of Keithon, stating that Roo did not call it a positive identification, Lawrence stated he was not the shooter, and there was no physical evidence. The jury found Keithon guilty on all four counts. The jury found Omar not guilty as to attempted felony murder and guilty of the remaining counts.

At Omar's sentencing, Hyman asked the trial court not to sentence him to more than ten years because "Keithon was the shooter" and Omar was "under the domination of" Keithon and was "the less culpable of the two." He also argued that Keithon "was the more bold of the two" and "was the mastermind of the incident." He asserted that "without the domination of his brother, Omar may actually turn out to be an okay citizen some day." In rebutting the state's arguments, Hyman asserted that the trial court should consider that Omar was acquitted for attempted felony murder, "took no part in the shooting" of Lawrence, and was only convicted of possessing a gun, not discharging it. He also stated

that he had previously represented Omar in another case. The trial court sentenced Omar to a total of 25 years, with a mandatory minimum sentence of 10 years for the attempted robbery.

Keithon's sentencing took place immediately after Omar's sentencing before the same judge. Hyman argued that Keithon's sentence should be limited to a term of years, as the trial court was not required to sentence him to life and was only bound to a 25-year minimum under the statute. Keithon maintained his innocence and asserted that he was not the shooter. The trial court sentenced Keithon to life imprisonment for attempted felony murder and 15 years for attempted armed robbery, 5 years for burglary, and 5 years for grand theft of a motor vehicle, to be served concurrently with the life sentence.

Keithon argued on appeal that the trial court failed to provide him with conflict-free counsel in violation of the Sixth Amendment. He argued that he and Omar were represented by a single lawyer, and the trial court failed to conduct a meaningful inquiry into the conflict. He argued that there was an actual conflict because Hyman did not argue he was not the shooter at trial and sentencing. The state responded that there was no actual conflict of interest that adversely affected Hyman's performance, so the adequacy of any waiver was moot. The Florida Second District Court of Appeal affirmed in a summary *per curiam* order.

In 2006, Keithon filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. He argued that Hyman had provided him ineffective assistance of counsel

because Hyman failed to obtain a valid waiver of a conflict of interest. He requested an evidentiary hearing. The state postconviction court denied the motion without holding an evidentiary hearing on the conflict-of-interest claims. It ruled that Keithon was not entitled to relief because he had previously litigated the conflict issues on direct appeal, so they were not cognizable through collateral attack.

In 2010, Keithon filed a supplement to his motion, which included a sworn affidavit from his appellate attorney stating that during oral argument the judges suggested the conflict issue should be raised as an ineffective assistance of counsel claim on collateral review instead of on direct appeal. The state postconviction court reconsidered its initial denial based on the supplement but ruled that the claims did not warrant relief. It ruled that the record refuted the claim that Hyman did not discuss any conflict of interest with him. Based on this record, it ruled that Keithon did not "demonstrate that counsel was deficient in his representation, let alone that he was prejudiced by any deficiency."

Keithon appealed *pro se*. The state responded that Keithon could not use a motion for postconviction relief because he raised the claim on direct appeal. The Second District Court of Appeal affirmed in an unexplained *per curiam* order.

In 2013, Keithon filed his initial *pro se* amended petition for a writ of habeas corpus. 28 U.S.C. § 2254. He later filed an amended petition and a counseled supplement. Keithon argued that he had received ineffective assistance of counsel because his attorney had

a conflict of interest, and the trial court did not adequately inquire about the conflict. He pointed to several instances establishing an actual conflict, including Hyman's opening statement about the evidence against each brother, Hyman's failure to point to inconsistencies in testimony suggesting Omar was the shooter, the verdict form conference, closing arguments, and Hyman's statements at Omar's sentencing. He requested an evidentiary hearing.

The Secretary responded and filed a supplemental memorandum. The Secretary conceded the petition was timely. The Secretary argued that Keithon did not object to any conflict at trial, so he was required to establish an actual conflict that adversely affected Hyman's performance. He argued that the unexplained decision on direct appeal denying his claim on the merits was the relevant state decision and was entitled to deference because it was not contrary to or an unreasonable application of clearly established federal law. The Secretary argued that, even if the claim were reviewed *de novo*, there was no actual conflict because arguing Omar was the shooter would not matter when they could both be guilty of felony murder and that there was no adverse effect because it was not plausible to argue Keithon was not the shooter when he argued he was not there. The Secretary argued that substantial evidence at trial established that Keithon was guilty and was the person who shot Lawrence, so any constitutional error did not have a substantial and injurious effect on the jury's verdict or his sentence.

The district court granted Keithon an evidentiary hearing on his conflict-of-interest claim, and he proceeded *pro se* with standby counsel. Hyman testified that he relied on a misidentification defense. He did not ask questions about who the shooter was because both brothers could be convicted of felony murder regardless of who the shooter was. But he agreed he had an obligation to refute evidence that an individual was definitely not the shooter, that a lawyer representing only Keithon might have more rigorously pursued a theory that he was not the shooter, and that based on the mandatory minimums it was important to advocate on behalf of the non-shooter. He agreed that highlighting inconsistencies in identification would damage Omar's defense. Hyman also conceded that his statements made on Omar's behalf at sentencing conflicted with Keithon's interests. But he stated that there was no actual conflict at sentencing because Keithon was receiving a mandatory life sentence and Hyman wanted to do whatever he could to prevent Omar from receiving a life sentence. He stated that Keithon was the mastermind based on the jury's verdict. But he admitted his statements hurt Keithon's appeal because he could not argue the evidence was wrong.

The district court granted Keithon's petition on the conflict-of-interest claim and denied his other claims. The court ruled that the state court's order was not entitled to deference because the last reasoned decision was the second postconviction order, which, contrary to clearly established federal law, relied on *Strickland v. Washington*, 466 U.S. 668 (1984), not *Cuyler v. Sullivan*, 446 U.S. 335 (1980). The district court, on *de novo* review, ruled that

Hyman rendered ineffective assistance of counsel because he labored under an actual conflict of interest that adversely affected his performance. It ruled that Keithon established that Hyman labored under an actual conflict because the shooter would receive a 25-year mandatory minimum which would not apply to the non-shooter. It ruled that the conflict adversely affected Hyman's performance because he did not pursue a plausible alternate strategy of maintaining Keithon's innocence while arguing that the jury should nonetheless find he was not the shooter. The court reasoned that Hyman did not follow this strategy because of his duty of loyalty to Omar, as exhibited in his opening statement for Omar, failure to exploit inconsistencies in witness descriptions of the shooter, failure to argue during the verdict form conference that evidence pointed to Omar as the shooter, and comments disparaging Keithon during Omar's sentencing hearing. The court also found that there was no waiver of conflict-free counsel as the joint-representation colloquy was inadequate.

## II. STANDARD OF REVIEW

We review the grant of a petition for a writ of habeas corpus *de novo*. *Gavin v. Comm'r, Ala. Dep't of Corr.*, 40 F.4th 1247, 1261 (11th Cir. 2022). If a state court has adjudicated a claim on the merits, a federal court may grant a writ of habeas corpus only if the decision of the state court "was contrary to, or involved an unreasonable

application of, clearly established Federal law" or was an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (2).

### III. DISCUSSION

We divide our discussion into three parts. First, we explain that the district court did not have jurisdiction to grant relief as to two of Keithon's convictions because he was not in custody on those convictions. Second, we explain that the state court decision denying Keithon's postconviction motion is not entitled to deference because it was contrary to clearly established federal law. Third, we explain that, under *de novo* review, Keithon established an actual conflict that adversely affected his attorney's performance.

### A. *The District Court Lacked Jurisdiction to Grant Relief as to Two of Keithon's Convictions.*

The Secretary argues that the district court lacked jurisdiction over Keithon's concurrent five-year sentences for burglary of a conveyance and grand theft of a motor vehicle because he was no longer in custody for those convictions. We agree. Whether a petitioner is in custody is a jurisdictional question we review *de novo. Diaz v. Fla. Fourth Jud. Cir. ex rel. Duval Cnty.*, 683 F.3d 1261, 1263 (11th Cir. 2012). For a federal court to entertain a petition for a writ of habeas corpus, the petitioner must be "in custody" pursuant to a judgment of a state court. 28 U.S.C. § 2254(a). A prisoner is not in custody for a conviction after the sentence imposed has fully expired. *See Maleng v. Cook*, 490 U.S. 488, 492 (1989). Although a prisoner is deemed to still be in custody for the first in a series of

consecutive sentences he is still serving, *see Garlotte v. Fordice*, 515 U.S. 39, 45–47 (1995), a prisoner who is serving the longer of two concurrent sentences but has completed the shorter sentence is not in custody under the shorter sentence, *see Mays v. Dinwiddie*, 580 F.3d 1136, 1140–41 (10th Cir. 2009). Keithon filed his petition in 2013, long after his five-year sentences for burglary and grand theft of a motor vehicle, which ran concurrent with his life sentence, had expired.

Keithon was no longer in custody for those charges, and we vacate the order to the extent it grants relief for Keithon's convictions for burglary and grand theft of a motor vehicle. We consider Keithon's petition to the extent it challenges his convictions for attempted felony murder and attempted robbery.

## B. *The Second District Court of Appeal's Decision Was Contrary to Clearly Established Federal Law.*

The Second District Court of Appeal's decision affirming the denial of Keithon's postconviction motion is not subject to deference because it was contrary to clearly established federal law. Because the state appellate court affirmed the denial of Keithon's postconviction motion without an explained decision, we ordinarily "look through" that decision to the last explained decision—the second postconviction order—and presume the state appellate court adopted that rationale. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But that presumption may be rebutted by "showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative

grounds for affirmance that were briefed or argued to the state [appellate] court or obvious in the record it reviewed." *Id.* at 125–26. And the "unreasonableness of the lower court's decision itself provides some evidence that makes it less likely [the appellate court] adopted the same reasoning." *Id.* at 132. The Secretary argues we should rely on the state court of appeals' unexplained order on direct appeal because that decision rejected Keithon's claim on the merits and the appellate court's unexplained decision affirming the second postconviction order was based on a procedural bar. We disagree.

The Secretary has not rebutted the presumption that the Second District Court of Appeal adopted the reasoning of the second postconviction order. The Secretary argues that the appellate court did not adopt the reasoning in the second postconviction order because the state argued the claim was procedurally barred on appeal from that order and the second postconviction order relied on the wrong legal standard. *See id.* at 125–26, 132. But the argument that the claim was procedurally barred is not correct under Florida law. The state argued on appeal from the second postconviction decision that the claim had been raised on direct appeal and could not be raised in a postconviction motion. *See Johnson v. State*, 593 So. 2d 206, 208 (Fla. 1992) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). But Keithon raised a trial court error on direct appeal, not an ineffective assistance of counsel claim. Under Florida law an ineffective assistance of counsel claim cannot be raised on direct appeal unless the record shows ineffectiveness

on its face, even if the same facts could support a claim of trial error, *Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001), and an unexplained denial should "rarely, if ever" bar an ineffective assistance of counsel claim in a postconviction motion, *Corzo v. State*, 806 So. 2d 642, 645 (Fla. Dist. Ct. App. 2002). So, the state's argument on appeal that the claim was procedurally barred was incorrect under state law. Although the second postconviction order's reliance on the wrong standard under federal law may be "some evidence" that the appellate court did not adopt the same reasoning, it is not enough to rebut the presumption that the state appellate court relied on the same reasoning absent a valid alternative ground. *See Wilson*, 584 U.S. at 132. We will look to the second postconviction order's rationale.

And the second postconviction order was contrary to clearly established federal law. When reviewing a state court's decision on the merits, we review only the state court's reasons for its decision, not the particular justifications the court applied. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1036–38 (11th Cir. 2022) (en banc) (analyzing the state court's conclusion that the petitioner "wasn't prejudiced by his counsel's deficient performance"). A state-court decision is "contrary to" clearly established federal law if it "contradicted the Supreme Court on a question of law." *Bowen v. Sec'y, Fla. Dep't of Corr.*, 92 F.4th 1328, 1332 (11th Cir.), *cert. denied*, 145 S. Ct. 272 (2024). The second postconviction order's conclusion that Keithon did not "demonstrate that counsel was deficient in his representation, let alone that he was prejudiced by any deficiency" is contrary to clearly established federal law. It relies on the legal

standard in *Strickland* instead of the standard in *Cuyler*, which governs conflict-of-interest claims and does not require a showing of prejudice. *See Cuyler*, 446 U.S. at 350; *Strickland*, 466 U.S. at 687, 692 (distinguishing ineffective assistance claims premised on alleged conflicts of interest). Because the state court decision is contrary to clearly established federal law, we review the claim *de novo. King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 867 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 2501 (2024). And we may rely on the facts developed at the evidentiary hearing in the district court. *See Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1280 (11th Cir. 2016).

### C.  Keithon Established that Hyman Had an Actual Conflict of Interest.

The Secretary argues that, even under *de novo* review, Hyman did not labor under an actual conflict that adversely affected his performance. We disagree. To establish a conflict of interest, the defendant must establish that his attorney had an actual conflict of interest that adversely affected counsel's performance. *Cuyler*, 446 U.S. at 350. To establish an "actual conflict," a petitioner must make a factual showing of his attorney's inconsistent interests and establish that his attorney acted in some way that reflected the reality of these conflicting interests. *Reynolds v. Chapman*, 253 F.3d 1337, 1343–44 (11th Cir. 2001). An actual conflict of interest exists if "introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir. 1983) (citation and internal quotation marks omitted). To prove adverse

effect, a defendant must establish that the defense attorney could have pursued a reasonably plausible alternative strategy that "was not followed because it conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343. While this strategy or tactic must be "reasonable" or "viable," the party does not have to prove that it "would necessarily have been successful." *Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999) (en banc) (citation and internal quotation marks omitted).

Hyman had an actual conflict of interest at trial that adversely affected his performance. Although Hyman relied on the consistent defense that neither brother was present, he had inconsistent interests in representing both Keithon and Omar because the shooter's identity was crucial. Although both brothers could be convicted of attempted felony murder regardless of who shot Lawrence, the person the jury identified as the shooter would face a 25-year mandatory minimum while the non-shooter would face a 10-year mandatory minimum. *See* Fla. Stat. § 775.087(2)(a); *Reynolds*, 253 F.3d at 1343; *Squire v. State*, 278 So. 3d 153, 156 (Fla. Dist. Ct. App. 2019) ("Vicarious liability based on a principal theory will not suffice under the 10/20/Life statute."). If Hyman argued the evidence established Omar was the shooter, he would have damaged Omar's defense. *See Reynolds*, 253 F.3d at 1344 (noting that "[b]lame-shifting defenses among co-defendants are a reflection of inconsistent interests" (internal quotation marks omitted)).

Hyman did not address inconsistencies in witness testimony that specifically pointed to Omar as the shooter. These

inconsistencies included initial police reports and Lawrence's pretrial statements suggesting Omar was the shooter, and Taylor's pretrial statements that Omar was the taller brother with gold teeth when the state's theory was that the taller brother was the shooter. The failure to point to these inconsistencies and explicitly argue Omar was the shooter led to the jury receiving a verdict form suggesting that Omar, at most, possessed a gun during the offense, while Keithon possessed and discharged a gun during the offense, forcing the jury to decide that Keithon was the shooter. Although Hyman mentioned that Keithon was not identified as the shooter, he failed to point to evidence that Omar was the shooter to counteract the state's theory that the physical evidence established Keithon was the shooter.

This actual conflict adversely affected Hyman's performance. A trial strategy arguing that although Keithon stated he was not there, evidence also established he was not the shooter was reasonable based on the inconsistencies as to who was the shooter. *See id*. Hyman testified that an attorney representing only Keithon might have more rigorously pursued the theory that Keithon was not the shooter. At the very least, Hyman could have requested that both verdict forms had language that both defendants "possessed" and "discharged" a firearm during the offense based on the evidence that Omar was the shooter, so that the jury could decide who the shooter was as opposed to being led to the conclusion that Keithon was the shooter. This strategy was not followed because of Hyman's external loyalties to Omar. If Hyman argued inconsistencies in descriptions of the shooter or allowed both verdict forms

to have the option of being the shooter, it would have implicated Omar as the shooter and Omar would have been subject to a 25-year mandatory minimum sentence.

Hyman's actual conflict of interest was more glaring at sentencing. Hyman stated that Omar was "less culpable" and under Keithon's "domination." He stated that Keithon was the shooter, "mastermind," and "more bold" of the two, disparaging Keithon for Omar's benefit. *See Mers*, 701 F.2d at 1328. The jury verdict convicting Keithon of attempted felony murder but not Omar did not establish that Omar was under Keithon's "domination" or that Keithon was the "mastermind." And the actual conflict adversely affected Hyman's performance at sentencing. Hyman testified that he knew Keithon would receive a mandatory life sentence and wanted to do whatever he could to prevent Omar from receiving a life sentence. But Keithon was subject to a 25-year mandatory minimum sentence, not a mandatory life sentence. Hyman's statements at sentencing likely affected Keithon's sentence. Hyman could have pursued an alternative strategy at Omar's sentencing of not arguing Keithon was the "mastermind" while commenting on Omar's acquittal on attempted felony murder. But Hyman made these statements because his loyalties to Keithon conflicted with his loyalties to Omar, and he was committed to obtaining a lower sentence for Omar.

Because Hyman's conflict of interest adversely affected his performance both at trial and sentencing, the district court did not err in granting Keithon's petition. The district court acted within

its broad discretion in vacating Keithon's convictions because the violation affected both Keithon's trial and sentencing. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (holding that a Sixth Amendment remedy must be "tailored to the injury suffered from the constitutional violation" (citation and internal quotation marks omitted)).

## IV. CONCLUSION

We **VACATE** the order granting Keithon's petition as to his convictions and sentences for burglary of a conveyance and grand theft of a motor vehicle and **REMAND** with instructions to dismiss the petition in part as to those convictions. We **AFFIRM** the order granting Keithon's petition vacating his convictions for attempted felony murder and attempted robbery.